White-Delafield-Morris Corporation v. Commissioner.
White-Delafield-Morris Corp. v. Commissioner
Docket No. 569-62.
United States Tax Court
T.C. Memo 1963-325; 1963 Tax Ct. Memo LEXIS 21; 22 T.C.M. (CCH) 1700; T.C.M. (RIA) 63325; December 16, 1963
*21 Alan Prigal, 2 E. 54th St., New York, N. Y., for the petitioner. Robert D. Whoriskey, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency of $7,217.28 in the income tax of the petitioner for 1956. The only issue for determination is the correctness of the respondent's action in disallowing a deduction taken by petitioner for a loss claimed to have been sustained on the sale of a portion of an undivided four-fifths interest in certain real property. Findings of Fact The case was submitted by the parties on a stipulation of facts with accompanying documents. The stipulated facts are found accordingly and other facts are found from the documents. The petitioner was incorporated on July 16, 1930, under the laws of the State of New York with a perpetual existence and with an authorized capital stock of 500 shares, all of which were without par value and were not classified. Its principal office is in New York City and its principal business in 1956 and for a number of years prior thereto was owning and renting real estate. Petitioner timely filed its Federal income tax return for 1956 with *22 the district director, Lower Manhattan district, New York, New York. The return was filed on the basis of a calendar year and on the cash receipts and disbursements method of accounting. John Jay White, Sr., a widower, died testate on December 31, 1902. At the time of his death he was the sole owner of a parcel of real property, sometimes hereinafter referred to as the Boadway property, located on the northwest corner of West 29th Street and Broadway in the Borough of Manhattan, New York City, being known as and by the street number 1205 Broadway, which he had acquired in 1874. The property consisted of an irregular lot, the main dimensions of which were approximately 110 feet by 140 feet, improved by a building thereon, the size, date, and type of construction as well as the useful life of which are not disclosed. The fair market value of the Broadway property on December 31, 1902, was $700,000, comprised of a value of $625,000 for the land and a value of $75,000 for the building. White, Sr., devised all of his right, title, and interest in the Broadway property to his five surviving children in equal shares, namely, John Jay White, Jr., Lucy A. (White) Morris, Alain C. White, *23 May (also known as Margaret) W. White, and Violetta S. (White) Delafield, sometimes hereinafter referred to as John Jay, Jr., Lucy Morris, Alain White, May White, and Violetta Delafield, respectively. Thus each of the five children then held an undivided one-fifth interest in the Broadway property. On December 16, 1923, John Jay, Jr., died testate. He devised his undivided one-fifth interest in the Broadway property in trust for his wife, Virginia Grace Hoffman White, for life, remainder to his brother and sisters, namely, Lucy Morris, Alain White, May White, and Violetta Delafield. Upon the death of the wife of John Jay, Jr., on or about July 17, 1937, each of his foregoing brother and sisters held an undivided one-fourth interest in the Broadway property. On December 16, 1923, the date of the death of John Jay, Jr., the Broadway property had no building thereon and the fair market value of his undivided one-fifth interest in the land on that date was $145,000. The record is silent as to the date of the removal and the disposition of the building that comprised part of the Broadway property at the time of the death of John Jay White, Sr., on December 31, 1902, and which had a fair *24 market value on that date of $75,000. On some undisclosed date subsequent to the death of John Jay, Jr., on December 16, 1923, and prior to 1938, a building was constructed on the Broadway property by an undisclosed party or parties at an undisclosed cost and with an undisclosed useful life from date of completion. On December 27, 1937, Alain White, May White, Lucy Morris, and Violetta Delafield transferred the Broadway property, land and improvements thereon, together with certain other real properties situated in New York City, to petitioner in exchange for 35 shares each of petitioner's stock. Thereafter, May White, never having married, died testate on February 18, 1941. Lucy Morris died testate and an English national on April 6, 1943. Violetta Delafield died testate on May 1, 1949, and Alain White, never having married, died testate on April 23, 1951. As of May 1, 1949, the date of death of Violetta Delafield, the Broadway property (land and building thereon) was valued by respondent at $300,000 for the purposes of determining the Federal estate tax liability of her estate. The will and codicil of Lucy Morris, an English national at the date of her death, were probated *25 in an English court on July 6, 1943. Ancillary letters testamentary were issued to Alain White on October 13, 1943, by the Surrogate's Court, New York County, New York. Alain White was also appointed substitute trustee by that court on April 6, 1944, since a national of England, named as trustee in the will, could not qualify as trustee in the State of New York. Following the death of Alain White on April 23, 1951, successor letters testamentary were issued to John W. Delafield, son of Violetta and her husband John Ross Delafield by the above-mentioned Surrogate's Court on November 26, 1951. The estate of Lucy Morris is still in the process of administration and as of December 31, 1956, the executors of her will were Arthur Morris, son of Lucy Morris, and Richard G. Medley, both of London, England, and the ancillary executor in the State of New York was John W. Delafield. The will of Violetta Delafield was admitted to probate by the Surrogate's Court, New York County, New York, on June 3, 1949. On the same date, letters testamentary were issued to the executors named therein, John Ross Delafield and John W. Delafield. The estate of Violetta Delafield is still in the process of administration *26 and as of December 31, 1956, John Ross Delafield and John W. Delafield were still serving as executors under the will. The will of Alain White was admitted to probate in the Surrogate's Court, New York County, New York, on August 14, 1951, as the will of a nonresident of the State of New York who died leaving property within the County of New York. On the same date, letters testamentary were issued by the court to the executors named in the will, namely, William B. Gadsden and Ruth H. Gadsden, husband and wife, and Bank of New York and Fifth Avenue. The estate of Alain White is still in the process of administration and as of December 31, 1956, the Gadsdens, who were not related to the Whites, Morrises, or Delafields, and the above-mentioned bank were serving as executors under the will. Attorneys for the executors were a law firm of which John Ross Delafield and John W. Delafield were members. White, Sr., was predeceased by his son, Arthur E. White, who died testate early in 1901. The will of Arthur E. White contained the following provisions: Ninth. I give and bequeath unto said John Jay White [my father] and unto my brother John Jay White Junior as Trustees the sum of One *27 hundred and five thousand dollars in trust to invest and reinvest the same, to collect and receive the income, interest and profits thereof whether paid in cash or otherwise and after deducting all necessary and proper taxes, charges and expenses, to apply the net income thereof to the use of my brother Alain C. White, during his lifetime and upon the death of said Alain C. White to pay over and distribute the principal of said trust fund in equal shares per stirpes and not per capita to and among the sons and descendants of sons of said Alain C. White, or in default of such descendants to my brother John Jay White Junior, or if he is dead, in equal shares per stirpes and not per capita to and among the sons and descendants of sons of my said brother John Jay White Junior. * * *
Thirteenth. If any of the remainders over after the death of any of my said brothers and sisters should fail by reason of there being no male descendants as therein provided then living, of my said brothers to take the same, I give and bequeath such remainder or remainders in equal shares per capita and not per stirpes to and among the children of my said brothers and sisters, the issue of any such deceased *28 child to take the share that their parent would have taken if living. Both White, Jr., and Alain White died without issue. As a consequence upon the death of Alain White on April 23, 1951, the beneficiaries of the trust created by Article Ninth of the will of Arthur E. White, sometimes hereinafter referred to as the Arthur E. White trust, became by reason of Article Thirteenth, the descendants of Lucy Morris and Violetta Delafield. The Arthur E. White trust was in existence as of April 23, 1951, the date of Alain White's death, and John W. Delafield was the successor trustee thereof. John W. Delafield deemed the trustee's powers to be continued by the above Article Thirteenth of the will because he considered there were uncertainties and contingencies, not disclosed by the record herein, which precluded the termination of the trust. With the oral or written consent of the beneficiaries designated by Article Thirteenth of the will, John W. Delafield, on December 26, 1951, organized, under the laws of the State of New York, Whitmord Securities Corporation, sometimes hereinafter referred to as Whitmord. Whitmord was organized with a perpetual existence and with an authorized capital *29 stock of $51,500, consisting of 1,500 shares of common stock of a par value of $1 each and 500 shares of 4 percent noncumulative preferred stock of a par value of $100 each. Upon organization of Whitmord, John W. Delafield transferred thereto assets held in the Arthur E. White trust in exchange for all of Whitmord's capital stock. Prior to and on December 28, 1951, the petitioner owned the fee of the land and the building thereon comprising the Broadway property. In what is sometimes hereinafter referred to as the 1951 transaction, the petitioner, on December 28, 1951, executed a deed conveying to Whitmord an undivided one-fifth interest in the fee of the Broadway property. The agreed price for the undivided one-fifth interest so conveyed to Whitmord was $65,129. As reported by petitioner on its income tax return for 1951, the adjusted basis to petitioner as of December 28, 1951, for its entire interest in the Broadway property was $648,542. In its income tax return for 1951 the petitioner deducted $64,579.40 as a loss sustained on the foregoing transaction with Whitmord. Upon an audit of the return, the respondent allowed the full amount of the deduction taken. By a deed executed *30 on May 6, 1957, Whitmord conveyed the above-mentioned undivided one-fifth interest in the Broadway property it had acquired on December 28, 1951, from petitioner to John W. Delafield as ancillary executor of the estate of Lucy Morris. The following is a copy of a letter from Whitmord to petitioner and the latter's acceptance of the arrangement proffered thereon: WHITMORD SECURITIES CORPORATION, 15 William Street, New York 5, New York December 28, 1956 White-Delafield-Morris Corporation, 15 William Street, Suite 1400, New York 5, New York Dear Sirs: The undersigned hereby offers to purchase your undivided four-fifths interest in the premises 1205 Broadway from January 1st, 1990 for the sum of $71,264.70 on the following terms and conditions: 1. $48,848.87 cash payable upon delivery to the undersigned of a Warranty Deed conveying said property from January 1st, 1990 and thereafter forever, in which Deed the intermediate estate in said premises will be retained by you; 2. The balance of $22,415.83, together with the unpaid balance of $28,584.17 for which we are obligated to you pursuant to our letter of Agreement dated December 27th, 1951, (the provisions of which letter *31 relating to payment of which unpaid balance are to be changed and modified as herein provided in the event this offer is accepted), amounting in all to the sum of $51,000.00 shall be payable in installments as follows: March 15th, 1957
$193.70
September 15th, 1957
$255.00 And thereafter $255.00 on March 15th and September 15th of each year and the unpaid balance on January 31st, 1963, together with interest on the unpaid balance at the rate of 5% per annum on March 15th and September 15th of each year. We shall have right to make additional payments on any interest date not to exceed $2,000.00 in any calendar year in multiples of $500.00. We propose that, with respect to the four-fifths interest in said premises for which this offer is made, the following shall be apportioned as of January 1st, 1990: (a) Rents; (b) Agent's Commissions; (c) Interest on mortgages; (d) Real estate taxes and real estate tax refunds (four-fifths of all tax refunds on account of real estate taxes for any period ending with December 31, 1989, are to belong to you); (e) Water rates; (f) Water meter charges; (g) Wages of employees; (h) Charges payable under service or maintenance *32 contracts; (i) Premiums on all transferable insurance policies; (j) Cost of fuel, if any. We further propose that if either you or we desire to sell or otherwise dispose of our respective interests in the premises prior to January 1st, 1990, we shall first consult with each other before entering into any agreement with, or making any commitment to, third parties, for the sale or other disposition of such interest. The appropriate provisions of this letter are to survive the delivery of the Deed. If you determine to accept the within offer, please sign the enclosed copy and return it to the undersigned. Yours very truly, WHITMORD SECURITIES CORPORATION By /s/ Eugene Blanc Jr. President ACCEPTED: December 31st, 1956. WHITE-DELAFIELD-MORRIS CORPORATION By /s/ John Ross Delafield President In pursuance of the foregoing the petitioner on December 31, 1956, executed to Whitmord a deed which recited that petitioner thereby granted and released unto Whitmord, its heirs or successors and assigns, "from January 1, 1990, and thereafter forever an undivided four-fifths interest in" the Broadway property and that petitioner thereby did not grant to Whitmord "the intermediate *33 estate in said premises." On June 3, 1957, Whitmord obtained a policy of title insurance covering the property involved in the foregoing transaction, sometimes hereinafter referred to as the 1956 transaction. After December 31, 1956, the managing agent of the Broadway property continued to maintain and operate it and distributed the net profits therefrom in proportion to the undivided interests in the property, fourfifths of such profits being distributed to petitioner. On July 16, 1930, the date of its incorporation, the petitioner's stockholders were May White, 20 shares; Violetta Delafield, 20 shares; and Alain White, 60 shares. By her will May White left the residue of her estate, including the stock of petitioner, to Lucy Morris, Violetta Delafield, and Alain White. By her will Lucy Morris left the residue of her estate, including the stock of petitioner, to her executors to sell and deliver the proceeds one-third to her son, one-third to her daughter, and one-third in trust for her widowed daughter-in-law for life, remainder to the descendants of her daughter-in-law and deceased son of Lucy Morris. Violetta Delafield by her will left the residue of her estate, incllding the *34 stock of petitioner, to her husband, John Ross Delafield, for life and upon his death the principal thereof to be divided into halves, one-half then to her son for life and on his death to his descendants, the other half to her (Violetta's) widowed daughter-in-law for life and upon her death to the descendants of her daughter-in-law and her (Violetta's) deceased son. Alain White by his will left the residue of his estate, including the stock of petitioner, one-third to White Memorial Foundation, Inc., and the remaining two-thirds to the descendants of his sisters, Lucy Morris and Violetta Delafield. On December 31, 1956, the petitioner had 240 shares of issued and outstanding stock and its stockholders, with the amount of stock held by each and the percentage thereof of the total, were as follows: Estate of Lucy Morris, 60 shares, 25 percent; Estate of Violetta Delafield, 83 shares, 34.5833 percent; and Estate of Alain White, 97 shares, 40.4167 percent. By reason of the wills of Lucy Morris, Violetta Delafield, and Alain White, the equitable ownership of petitioner's stock on December 31, 1956, was as follows: White, Memorial, Foundation,
Inc.
13.47 percent
Morris family
38.48 percent
Delafield family
48.05 percent
Total
100.00 percent
*35 The following is a statement of the officers and directors of petitioner on December 31, 1956, all of whom were partners in the Delafield law firm, members of which included John Ross Delafield, John W. Delafield, Eugene Blanc, Jr., Frederick P. Rich, and Wilmurt B. Linker, and the estates of which such directors were executors: Director
Office
Executor of estate of
John Ross Delafield
President
Violetta Delafield
John W. Delafield
Treasurer
Lucy Morris
Violetta Delafield
Wilmurt B. Linker
Frederick P. Rich
Secretary
On December 31, 1956, Whitmord had issued and outstanding 760 shares of common stock and 190 shares of preferred stock and its sole stockholder was John W. Delafield as successor trustee of the trust created by Article Ninth of the will of Arthur E. White and of which the descendants of Lucy Morris and Violetta Delafield were the equitable owners. The following is a statement of Whitmord's officers and directors on December 31, 1956, all of whom were partners in the Delafield law firm, and the estates of which they were executors: Director
Office
Executor of estate of
Eugene Blanc, Jr.
President
John W. Delafield
Treasurer
Lucy Morris
Violetta Delafield
John Ross Delafield
Secretary
Violetta Delafield
*36 With respect to the above-described 1956 transaction with Whitmord involving the petitioner's four-fifths undivided interest in the Broadway property, the petitioner in its income tax return for 1956 deducted $69,197.10 for a loss sustained on the sale of the property as property other than a capital asset. The explanation of the computation of the loss was shown in Schedule D (II) in petitioner's return as follows: Date acquired January 1, 1938; sold December 31, 1956; gross sales price $71,264.70; "Cost after depreciation" $140,383.15; expense of sale $78.65; and loss $69,197.10. The sales price, $71,264.70, shown by petitioner in its return with respect to the 1956 transaction was determined by petitioner and Whitmord as follows: The agreed price for the undivided one-fifth interest in the Broadway property which petitioner conveyed to Whitmord in 1951 was $65,129. On this basis the remaining four-fifths interest was valued at $260,000. To that amount was applied the present value of $1 payable in 33 years at 4 percent compound interest or 27.4095 percent, taken from a handbook of financial mathematics, to arrive at a sales price of $71,264.70. The parties have stipulated that *37 the fair market value on December 31, 1956, of the entire interest in the Broadway property, land and building, was not less thain $315,000 nor more than $340,000. The cost after depreciation, or adjusted basis, $140,383.15, shown by petitioner on its income tax return with respect to the 1956 transaction was determined by petitioner as follows: The adjusted basis for the Broadway property on December 31, 1951, as reported by petitioner on its return for 1951 was $648,542. Four-fifths of that amount was determined to be $518,833.60. The petitioner further computed depreciation and other undisclosed adjustments for the intervening period, January 1, 1952 to December 30, 1956, and reduced its basis to $512,169.70 on December 31, 1956, immediately prior to the 1956 transaction. To the $512,169.70 was applied 27.4095 percent to arrive at a basis of $140,383.15. The amount of the petitioner's expenses of the 1956 transaction was $78.65. The total consideration received by petitioner from the 1956 transaction was $71,264.70, which consisted of cash in the amount of $48,848.87 and purchase obligations in the net amount of $22,415.83 due in 1963. The face amount of the purchase obligations *38 actually transferred was $51,000. Purchase obligations of $28,584.17 received by petitioner in connection with the 1951 transaction with Whitmord and due in 1959 were canceled. The new purchase obligations due in 1963 and totaling $51,000 were comprised of the foregoing amounts of $22,415.83 and $28,584.17. In determining the deficiency the respondent disallowed the deduction of $69,197.10 taken by the petitioner for a loss sustained on the 1956 transaction with the following explanation: The loss of $69,197.10 claimed in your return for the year 1956 from the sale of the fee title in the 4/5 interest in the premises 1205/13 Broadway, New York City (the fee title to commence on January 1, 1990), is disallowed inasmuch as such sale was not entered into in an arm's length transaction and you retained the present fee title, ownership and possession of the said premises with all rights and enjoyment of such ownership. Opinion Taking the position that on the record presented the 1956 transaction between it and Whitmord constituted a sale of a future interest in the Broadway property under New York law, analogous for tax purposes to the sale of a vested remainder, made at arm's length, *39 the petitioner contends that the sale was bona fide and that, therefore, it is entitled to the deduction taken for the loss sustained thereon. Stating on brief that he does not contend that no recognizable loss resulted from the 1956 transaction because under New York law a future interest cannot be sold or that a valid sale of a future interest cannot result in a taxable event, the respondent takes the position that the 1956 transaction was not a bona fide sale but a sham. The respondent points out that at the time of the 1956 transaction John Ross Delafield and John W. Delafield were officers and directors of both petitioner and Whitmord; that they each were executors of the estate of Violetta Delafield, the equitable beneficiaries of which were the Delafield family; that John W. Delafield was ancillary executor in the State of New York of the estate of Lucy Morris, the equitable beneficiaries of which were the Morris family, and successor trustee of the Arthur E. White trust, the beneficiaries of which were the descendants of Violetta Delafield and Lucy Morris; that the equitable ownership of the stock in the petitioner was in the White Memorial Foundation, Inc., found above to *40 amount to 13.47 percent, the Morris family, found above to amount to 38.48 percent, and the Delafield family, found above to amount to 48.05 percent; and that the equitable ownership of the stock in Whitmord was in the descendants of Lucy Morris and Violetta Delafield. He urges that in view of the foregoing we should conclude that the descendants of Lucy Morris and Violetta Delafield will end up with the stock of both petitioner and Whitmord, excepting the stock in petitioner of which the White Memorial Foundation, Inc., was the equitable owner; that since the beneficial owners of both corporations were predominantly the same, it accordingly made no difference whether the four-fifths interest in the Broadway property here in issue was held by the petitioner or Whitmord; that such being the case there was no change in the control or the flow of economic benefits resulting from the 1956 transaction; and that the foregoing establish that such transaction was a sham. Other contentions made by respondent are that the 1956 transaction was not a bona fide sale and that the record fails to show that the sales price of $71,264.70, determined by petitioner and Whitmord for the portion of the *41 four-fifths interest in the Broadway property conveyed by petitioner to Whitmord, represented the fair market value of such portion; that the record fails to show that the adjusted basis of the portion of such interest was $140,383.15 as used by petitioner in computing its loss on the transaction; and that the record fails to show any business purpose for the petitioner's transactions of 1951 and 1956 with Whitmord. At the time of the 1956 transaction, December 31, 1956, the petitioner had outstanding 240 shares of stock which were held by the following estates, all of which were still in the process of administration, and the executors of which were as set forth below: No. of
Percent
Shares
of Total
Executor
Estate of Lucy Morris
60
25
John W. Delafield, Ancillary
Estate of Violetta Delafield
83
34.5833
John Ross Delafield
John W. Delafield
Estate of Alain White
97
40.4167
William B. Gadsden
Ruth H. Gadsden
Bank of New York and Fifth
Avenue
It is well established that in New York title to the rights in stock owned by a decedent at the time of his death pass by operation of law to his executor or executors and *42 that a trustee of a trust holds legal title to the corpus of the trust. . From the foregoing it is apparent that at the time of the 1956 transaction legal title to more than 40 percent of petitioner's stock was in the executors of the estate of Alain White whereas legal title to less than 60 percent was in the executors of the estates of Lucy Morris and Violetta Delafield. The parties, whether purposely or inadvertently, by their stipulation have left the record silent as to the knowledge or participation of the executors of the estate of Alain White as to the authorization of the petitioner's conveyance of its undivided fourfifths interest in the Broadway property in the 1956 transaction. Ordinarily when property is sold, the purchaser is free to use and to make disposition thereof at any time, in any manner, and at whatever price he sees fit without obligation first to confer or consult with the party from whom he purchased the property. However, here the agreement under which the 1956 transaction was entered into contained the following provision: We further propose that if either you or we desire to sell or otherwise dispose *43 of our respective interests in the premises prior to January 1st, 1990, we shall first consult with each other before entering into any agreement with, or making any commitment to, third parties, for the sale or other disposition of such interest. We are not informed as to the reason for the inclusion of the foregoing provision in the agreement or what objective was contemplated by the consultation referred to in the provision. As was pointed out in , affd. (C.A. 9, 1951), where a sale is made part of a plan which includes an agreement for the reacquisition of the property sold and the plan is carried out, any loss suffered as a result of the "sale" of the property is not deductible. Since there is no clear showing here that the objective contemplated by the consultation in question was not for the reacquisition by petitioner of the portion of its undivided four-fifths interest in the Broadway property conveyed by it to Whitmord in the 1956 transaction, we are unable to conclude that what was said in the above-mentioned case is not applicable here. In the 1956 transaction *44 the petitioner conveyed a portion of its undivided four-fifths interest in the Broadway property to Whitmord. Under the terms of the conveyance Whitmord was to come into possession and enjoyment of the entire four-fifths interest 33 years later, or on January 1, 1990. The petitioner retained the ownership, possession, and enjoyment of such interest during the 33-year period. Although the petitioner concedes that such a disposition was an unusual type of transaction, neither petitioner nor Whitmord, for the purpose of ascertaining the sale price of the interest conveyed to Whitmord, obtained an independent appraisal by a third party or parties familiar with the then fair market value of real estate of a type such as the Broadway property - a lot improved by a three-story brick store and a loft building continually used as rental property since its construction on an undisclosed date - and also familiar with the commonly accepted method or methods of arriving at the fair market values of the interest in the property retained by petitioner as well as that conveyed by petitioner to Whitmord. Instead the sales price, $71,264.70, for the interest conveyed to Whitmord, was determined by petitioner *45 and Whitmord as follows: The agreed selling price of $65,129 for the undivided one-fifth interest in the Broadway property which the petitioner conveyed to Whitmord in 1951 was used as the starting basis. On that basis they valued the petitioner's remaining undivided four-fifths interest at $260,000, or $516 less than four times the aforementioned $65,129. To the $260,000, they applied 27.4095 percent as representing the present value of $1 payable in 33 years at 4 percent per annum compound interest and arrived at a sales price of $71,264.70 for the petitioner's remaining undivided four-fifths interest in the property. It is true that the stipulated value of the entire interest (five-fifths) of the Broadway property on December 31, 1956, the date of the 1956 transaction, was not less than $315,000 nor more than $340,000 and that the total of the $65,129 for Whitmord's one-fifth interest and $260,000 for the petitioner's fourth-fifths interest is $325,129 and that such amount falls about midway between $315,000 and $340,000. However, it does not necessarily follow from that that the value of $260,000 determined by petitioner and Whitmord for the petitioner's four-fifths interest *46 and the amount of $65,129 used for Whitmord's one-fifth interest represented fair market values for the respective interests. To conclude as petitioner suggests that such amounts represented such values of the respective interests, we would be required to make the assumption, which is without support in the record, that an undivided one-fifth interest in the Broadway property on the critical date had a fair market value no greater and no less than the $65,129 used by the parties as a basis for determining the value of $260,000 for petitioner's four-fifths interest. Further we would be required to assume, also without support in the record, that a four-fifths interest in the property had a value no greater and no less than approximately four times the value of a single one-fifth interest. We must decline to make such assumptions. Even though petitioner had established that the fair market value on December 31, 1956, of its four-fifths interest in the Broadway property was $260,000, we are without an evidentiary basis for concluding that 27.4095 percent thereof, or $71,264.70, represented the fair market value of the portion of such interest conveyed by petitioner to Whitmord in the *47 1956 transaction. In the computation of the amount of the deduction taken for a loss sustained on the 1956 transaction, the petitioner used $140,383.15 as the adjusted basis of the portion of its four-fifths interest in the Broadway property conveyed to Whitmord in the transaction. The adjusted basis of $140,383.15 thus used was determined by petitioner as follows: The adjusted basis of the Broadway property on December 31, 1951, as reported by petitioner on its income tax return for 1951 was $648,542. Four-fifths of that amount was determined to be $518,833.60. The petitioner further computed depreciation and other undisclosed adjustments for the intervening period, January 1, 1952 to December 30, 1956, bringing its adjusted basis down to $512,169.70, immediately prior to the 1956 transaction. To the amount of $512,169.70 the petitioner applied 27.4095 percent to arrive at an adjusted basis of $140,383.15 for the portion of its four-fifths interest in the property which it conveyed to Whitmord on December 31, 1956. From the foregoing it is apparent that petitioner's computation of the $140,383.15 is bottomed on the beginning premise that the adjusted basis of the property, five-fifths, *48 on December 31, 1951, was $648,542. The petitioner has not favored us with a showing as to the items and the amounts thereof comprising the $648,542 and the other evidence necessary to establish that the correct adjusted basis was such amount. As a consequence we are unable to determine that the amount of $648,542 correctly reflected petitioner's adjusted basis of the property on December 31, 1951, or that the amounts derived by petitioner's computations thereon correctly reflect what they purport to show as to the adjusted basis of the property at a subsequent time. From a careful examination of the record we are unable to find any evidence to indicate that there was any business purpose for the petitioner's participation in either the 1951 transaction or the 1956 transaction. In fact the record shows that slightly more than 4 months after the 1956 transaction and on May 6, 1957, Whitmord conveyed to the estate of Lucy Morris the undivided one-fifth interest in the Broadway property which Whitmord had acquired from petitioner in the 1951 transaction. The record fails to disclose the reason prompting the 1957 conveyance or that any business purpose of petitioner or of Whitmord was *49 served thereby. From what has been said hertofore it is our opinion that a fair over-all view of the record requires the conclusion that the petitioner has not established that the 1956 transaction constituted an arm's length transaction and a bona fide sale and that the respondent erred in disallowing the deduction of $69,197.10 taken by petitioner as a loss sustained on the transaction. Accordingly Decision will be entered for the respondent.